# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MILDRED JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 13 C 1174** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **CAROLYN W. COLVIN, Acting** | ) | **Maria Valdez** |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Mildred Jones's claims for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to Reverse the Decision of the Commissioner of Social Security is GRANTED IN PART and DENIED IN PART, and the Commissioner's motion for summary judgment [Doc. No. 25] is DENIED.

## BACKGROUND

### I.     PROCEDURAL HISTORY

On July 6, 2009, the Claimant, Mildred Jones, filed claims for both Disability Insurance Benefits and Supplemental Security Income, alleging disability since

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

May 14, 2009 based on diagnoses of degenerative disk disease, major depressive disorder, diabetes mellitus, gastro-esophageal reflux disease, hypertension, obesity, and polysubstance abuse in lengthy remission. The claim was denied initially and upon reconsideration, (R. 157), after which Jones timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 25, 2011. (R. 158, 61.) Jones personally appeared and testified at the hearing and was represented by counsel. A vocational expert also testified. (R. 94.)

On June 15, 2011, the ALJ denied Jones's claims for both Disability Insurance Benefits and Supplemental Security Income, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Jones's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.     FACTUAL BACKGROUND[2]

### A.     <u>Background</u>

Jones was born on April 30, 1971 and was 38 years old at the time of the ALJ hearing. (R. 67)

### B.     <u>Medical Evidence</u>

Jones's treating physician – Dr. Chicos, a specialist in internal medicine – submitted a questionnaire stating that Jones was unable to maintain competitive employment and listing her diagnoses. (R. 353, 357, 358.) Dr. Chicos wrote that Jones could sit for about two hours and stand or walk for about two hours. (R. 357.)

---

[2]  The following facts from the parties' briefs are undisputed unless otherwise noted.

Dr. Chicos's questionnaire stated that, while Dr. Chicos believed Jones could climb and reach occasionally, she was not capable of bending, twisting, stooping, kneeling, crawling, pulling, or pushing. (R. 356.) Dr. Chicos noted that Jones was capable of walking less than one block without rest or severe pain. (R. 355.) She identified Jones's symptoms as low back pain, and listed clinical findings of "tender lower back at palpation" and a positive straight leg-raising test. (R. 352.)

A second of Jones's treating physicians, Dr. Dolatowski, also submitted a questionnaire. Dr. Dolatowski, a specialist in internal medicine, also determined that Jones was unable to maintain competitive employment. (R. 973.) Dr. Dolatowski's form concluded that Jones was capable of sitting for less than two hours per day and standing or walking for less than two hours per day. (R. 974.) Dr. Dolatowski also noted that Jones "suffers with severe depression and psychosis" in reaching his determination. (R. 974.) Opinions were also obtained from state agency medical consultants, who reviewed Jones's medical records. After giving controlling weight to Dr. Chicos's opinion, Dr. Brill concluded that Jones's impairments were equal in severity to disorders of the spine in Listing 1.04A. (R. 470.) *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A.

Dr. Lavallo, another state agency physician, also reviewed Jones's file. Dr. Lavallo concluded that Jones was capable of maintaining light employment and that she could sit for 6 hours per day and stand or walk for six hours per day. (R. 517.) Dr. Lavallo determined that Jones was capable of occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. (R. 518.) While Dr. Lavallo

concluded that Jones's statements as to the extent of her impairment were partially credible, he found that "the medical evidence does not suggest that [Jones]'s ability to walk, stand, or sit is significantly limited." (R. 521.) This conclusion was later affirmed by another agency physician, Dr. Ruiz. (R. 558.)

### C.  Plaintiff's Testimony

Jones testified that she had last worked in May of 2009 as a control center technician, but had quit after "missing a lot of work for being in a lot of pain and [because of] a lot of medical issues that I had." (R. 71.) She stated that she had quit because she "couldn't tolerate the noise, the people. I just couldn't deal with it. It was stressful. I just couldn't take it any longer." *Id.* Jones also testified that she had left her prior job as a security guard – as well as the job as a control center technician – because the pain made it impossible to stand or sit for the required periods. (R. 77.)

With respect to her daily activities, Jones testified that her family prepared meals for her, and that her daughter helped her with personal care, and would help her bathe. (R. 72-73.) Jones stated that her family did the housework and shopping. (R. 73.) While she was licensed to drive, Jones was unable to do so because she could not focus, and her family would drive her when necessary. And while she had enjoyed attending church in the past, it had "been years" since Jones had done so. (R. 91.) Jones also stated that she did not receive visitors and was visited only by her family. (R. 91-92.)

Jones testified that she was able to sit for a maximum of 30 minutes, after which time she needed to stand due to pain; however, she also testified that it was very difficult for her to stand for long periods of time because of pressure on her back and legs and that, after twenty to thirty minutes, she would have to sit down again. (R. 74.) She felt pressure running "from my neck down and then my legs. It goes down into my lower back. And then my legs bother me also." (R. 76.) Jones also told the ALJ that she experienced pain in her back and legs twenty out of twenty four hours per day. (R. 79.) The pain was a 10 on a scale of 1 to 10, 10 being the most severe. (R. 80). When she received steroid injections, the pain would be alleviated for one day but would return afterward. (R. 80-81, 84-85.) Jones took numerous medications to treat the pain, including Tylenol, Vicodin, Lyrica, and pain patches. (R. 83.) She also required the use of a cane whenever she needed to stand and walk. (R. 79.)

Jones testified that she had diabetes, and that her vision in her right eye was "very blurred." (R. 85.) She treated her diabetes with oral medication, and was compliant with her prescribed regimen. (R. 86.) She said she was unable to walk half a block, (R. 74), that she had difficulty using stairs, and that it was often difficult for her to feel her extremities. (R.74-75.) Jones left her house on average twice per week, and she was able to lift approximately eight pounds. (R. 75-76.)

With respect to mental impairments, Jones testified that she "hear[d] things, hallucinations," and that she had mental breakdowns. (R. 86.) She had cut herself three times, and had attempted suicide in the fall of 2010. (R. 87.) However, Jones

had not been hospitalized as a result of mental illness. Jones also had difficulty socializing with and otherwise being around other people, and had difficulty focusing. (R. 88-89.) Jones, who was tearful at the hearing, testified that she would be tearful frequently during a typical week. She had been taking Saphris as prescribed by her treating psychiatrist, but the medication resulted in drooling and an inability to sleep; Jones had informed her therapist about these problems, and that they had discussed the possibility of inpatient treatment. (R. 89.) Jones further testified that she slept for approximately two hours per night because her sleep would be interrupted by hallucinations. (R. 90-91.) As a result, Jones was sleeping for periods of approximately half an hour at a time during the day for a total of "two or three hours a day." (R. 91.)

**D.** **Vocational Expert Testimony**

The ALJ asked the Vocational Expert ("VE") a series of questions about a hypothetical person with the same age, education, and work experience as Jones. First, the ALJ asked about a hypothetical person with a residual functional capacity ("RFC") at the light exertional level, based on the evaluation of Dr. Lovallo. (R. 101.) The ALJ specified that the individual would be limited to "occasionally climbing, stooping, kneeling, crouching and crawling," and that there would be "some interruption in attention and concentration and overall pace, though she would be expected to be able to complete tasks adequately." The ALJ also specified that the "hypothetical individual would have the ability to manage stresses involved in routine and repetitive work." The VE said that the hypothetical person could not

perform Jones's past work, but that other jobs at the light exertional level would be available, including marker (115,000 jobs in the national economy, 4,200 in Indiana), routing clerk (69,000 jobs nationally, 2,050 in Indiana), and mail clerk (16,500 jobs nationally, 1,050 in Indiana).

In the second hypothetical, the ALJ asked about a person with the same capacity as the individual in hypothetical one, but who also required "occasional balancing with the use of a hand-held assistive device" and therefore was limited to "jobs that can be performed using a hand-held assistive device required for uneven terrain or prolonged ambulation." (R. 104.) The ALJ also specified that the individual would have "moderate limitations in concentration" and therefore limited the time spent working in close proximity to others "in order to minimize distractions" and specified that the person would complete a "low-stress job with only occasional decision-making required," only "occasional interaction" with co-workers and supervisors, and no interaction with the public. (R. 104.) The VE stated that the hypothetical person could not perform any of Plaintiff's past work and that there were no jobs available at the unskilled level available where work in close proximity to others was so limited. (R. 105-06.)

For hypothetical three, the ALJ retained the same criteria as the first hypothetical but added that the person "would be given moderate limitations in concentration work that is not performed in a noisy environment." (R. 106.) The ALJ specified that any jobs should require "low stress with only occasional decision-making, no interaction with the public, and occasional interaction with co-workers

and supervisors." (R. 107.) The VE found that a person so limited could not perform any of Plaintiff's past work, but could perform the three other jobs mentioned in hypothetical one. *Id.*

For hypothetical four, the ALJ retained the same physical and mental limitations as hypothetical three, but added "moderate limitations with persistence" and "no task requiring intense focused attention for more than 30 minutes continuously," but added that "the individual would not be off task for more than 10 percent of the workday." *Id.* The VE stated that the acceptable off-task time-per-hour would be four minutes, and that ten percent of a given work hour would be six minutes, exceeding the acceptable limit. (R. 108.) The VE specified, however, that it would be acceptable for an employee in the three jobs listed in hypothetical one to concentrate for thirty minutes, take a break of up to four minutes, and then resume concentration for the rest of the hour. (R. 108-09.) In those conditions, the VE stated that the person could not perform any of Plaintiff's past work, but could perform the three jobs mentioned in hypothetical one. (R. 109.)

Finally, in hypothetical five, the ALJ asked the VE about a hypothetical person with the same limitations as in hypothetical four but added the "additional limitation of having to use a hand-held assistive device at all times when standing" or walking. (R. 110.) The VE stated that such a person could neither perform any of Plaintiff's past work nor could she perform any other work. *Id.*

On examination by Plaintiff's attorney, the VE stated that the listed jobs would tolerate one day of absence per month, or twelve days per year, inclusive of

sick, vacation, and personal days. (R. 111.) The VE also specified that a total of 20 percent of off-task time during the work-day would be acceptable, but that that estimate "include[d] regularly schedule[d] breaks and lunch." (R. 112.)

E.   **ALJ Decision**

The ALJ found at step one that Jones had not engaged in substantial gainful activity since her onset date of May 14, 2009. At step two, the ALJ concluded that Jones had severe impairments of diabetes mellitus, hypertension, gastro-esophageal reflux disease, obesity, degenerative disk disease, asthma, major depressive disorder, and polysubstance abuse in lengthy remission. The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal a Listing.

The ALJ then determined that Jones retained the RFC to perform light work, "except that the [she] may occasionally balance with the use of a hand-held assistive device, may occasionally crawl, kneel, crouch, stoop, climb ladders, ropes, scaffolds, ramps or stairs," and that Jones was "limited to jobs that can be performed while using a hand-held assistive device for prolonged ambulation or on uneven terrain." (R. 44.) The ALJ also found that Jones had "moderate limitations in persistence and as a result is limited to work that is not performed in a noisy environment," "does not require intense, focused concentration for more than thirty minutes consistently," and was limited to "working in a low stress environment, in that only occasional decision making will be required," with "no contact with the general public" and "only occasional interaction with co-workers and supervisors." *Id*.

The ALJ concluded at step four that Jones could not perform her past relevant work. At step five, however, based upon the VE's testimony and Jones's age, education, work experience, and RFC, the ALJ concluded that Jones could perform jobs existing in significant numbers in the national economy, leading to a finding that Jones was not disabled under the Social Security Act.

## DISCUSSION

### I.    ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1 through 4.

*Id.* Once the claimant shows an inability to perform past work, however, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is therefore limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

A reviewing court "examine[s] the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow . . . [the] reviewing court[] to assess the validity of the agency's ultimate findings and

afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *see Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . .").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls to the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Jones argues that the ALJ's decision was improper because she did not perform an adequate analysis at step 3, did not adequately assess Jones's credibility, and otherwise erred in assessing Jones's RFC. Jones requests that the Court reverse the ALJ's determination and find that Jones is entitled to benefits or, in the alternative, remand for additional proceedings. Although the ALJ did not err in the step 3 analysis, the ALJ did err in reaching credibility conclusions and in the assessment of Jones's RFC, as will be described below. Accordingly, remand for a redetermination of Jones's application is appropriate in this case.

## A.  <u>Step 3 Analysis</u>

Jones argues that the ALJ erred in finding that she was not disabled at step 3. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing," *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). The ALJ also has a duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability. But he or she need not provide a written evaluation of every piece of evidence that is presented." *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988) (internal citation omitted); *see also Herron*, 19 F.3d at 334; *Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1002 (N.D. Ill. 2010) (discussing "three requirements for an ALJ's step three determination to meet the 'substantial evidence' standard" highlighted by the Seventh Circuit).

Jones argues that, because Dr. Brill concluded that Jones's impairments equaled Listing 1.04A, the ALJ erred in finding that Jones was not disabled at step 3, as Brill "was the only state agency physician who provided an opinion as to whether Ms. Jones's impairments met or equaled a listed impairment." This, however, is not correct: in finding that Jones's impairments did not equal listing 1.04A, the ALJ relied on the evaluations of Drs. Lavallo and Ruiz, who had concluded that Jones was not disabled. (R. 49.) And although the ALJ did so before discussing Dr. Brill's opinion, the ALJ addressed the medical evidence in detail with regard to Jones's impairments earlier in the opinion and specifically noted a

negative straight-leg raising test, which contradicts a finding of meeting or equaling Listing 1.104A, *see* 20 C.F.R. Part 404, Subpart P, App. 1, 1.04A, as well as other adverse medical evidence.

Although the ALJ's discussion of the medical evidence took place separately from the dismissal of Dr. Brill's conclusion, the Seventh Circuit has specified that a reviewing court is to read the Commissioner's decision as a whole, and the Commissioner need not "repeat substantially similar factual analyses at both steps three and five." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Additionally, although challenging the ALJ's finding at step 3, Jones does not refer to any medical evidence that the ALJ overlooked in reaching this conclusion, and the ALJ gave a discussion of the medical evidence both supporting and contradicting her conclusion in reaching it. *Cf. Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) ("[The ALJ's] failure here to evaluate any of the evidence that potentially supported Ribaudo's claim does not provide much assurance that he adequately considered Ribaudo's case."). The ALJ did not err in finding that Jones did not qualify as disabled at step 3.

## B. <u>Residual Functional Capacity</u>

Jones also argues that the ALJ erred in concluding that she had the RFC to perform light work with certain further restrictions. (R. 44.) A claimant's residual functional capacity is "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir.

2008); *see* 20 C.F.R. § 404.1545; SSR 98-8p.[3] In determining a claimant's RFC, the

ALJ must consider all of a claimant's "medically determinable impairments,"

including those which are not severe. 20 C.F.R. § 404.1545(a)(2). The RFC

assessment is made based on "all relevant medical and other evidence," *id.* §

404.1545(a)(3) and considers both the claimant's physical and mental abilities. *Id.* §

404.1545(b), (c). Because the ALJ erred in evaluating Jones's credibility as to the

extent of her limitations and failed to analyze evidence relevant to those

limitations, remand is appropriate here.

### 1. *Credibility*

Jones argues that the ALJ erred in a number of ways in determining that

Jones's testimony as to her impairments was not credible. "ALJ credibility

determinations are given deference because ALJs are in a special position to hear,

see, and assess witnesses. Therefore, [this Court] will only overturn the ALJ's

credibility determination if it is patently wrong, which means that the decision

lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir.

2014), *as amended* (Aug. 20, 2014), *reh'g denied* (Oct. 10, 2014) (citations omitted).

While receiving such deferential review, however, "the ALJ must explain her

decision in such a way that allows [this Court] to determine whether she reached

her decision in a rational manner, logically based on her specific findings and the

evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011); *see*

---

[3] Interpretive rules, such as Social Security Rulings ("SSRs"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

*also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that, in assessing the credibility findings, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported").

Jones first argues that the ALJ improperly assessed her credibility by relying on boilerplate language, thereby failing to evaluate her case. Jones is correct that the "ALJ's credibility finding included a familiar statement: 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity [assessment].' " *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). As the Seventh Circuit has repeatedly noted, this formulation indicates that an ALJ may have determined a claimant's residual functional capacity *before* assessing her credibility as to the severity of her symptoms, which reverses the required analysis. *See*, *e.g.*, *id.*; *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). However, while the ALJ in this case did use boilerplate language, she also explained the reasoning behind her credibility conclusions as will be discussed below; in such a situation, the use of boilerplate language is not alone a reason for reversing the ALJ's decision. *See Pierce*, 739 F.3d at 1050.

Jones, however, also challenges the ALJ's credibility determination on other grounds. First, she argues that the ALJ failed to adequately address the visual and auditory hallucinations she testified to experiencing.[4] Without specifically detailing

---

[4] Although Jones argues that the ALJ failed to address these issues in any capacity, the Commissioner did in fact address these claims but determined that Jones was not credible with respect to her assertions as to the extent of her symptoms, as the following section discusses.

the extent of Jones's alleged symptoms, the ALJ noted that Jones experienced visual and auditory hallucinations, and that her medical diagnoses were consistent with such symptoms. (R. 45, 48.) However, the ALJ then found that Jones's reports as to the severity of the hallucinations were not credible because they were contradicted by her medical records, because Jones had failed to attend numerous "mental health treatment sessions," and because Jones's reports were contradicted by other evidence in the record. (R. 48-49.) Jones is correct that, in relying on these factors, the ALJ failed to adequately evaluate her credibility.

With respect to contradiction in the medical records, the ALJ cited to the records of four mental health treatment sessions during which Jones's physician reported that Jones had been "alert and oriented in three spheres, presenting with a euthymic mood and congruent affect, without suicidal or homicidal ideation, without auditory or visual hallucination and with no discernable evidence of delusional thinking." (R. 48, 591, 593, 598, 600.) However, these notes are simply recognitions that, at the time of the given appointment, Jones was not adversely affected by her mental illness, the existence of which the ALJ otherwise acknowledged. (R. 48.) As the Seventh Circuit has recognized, a "person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). In this respect, "a snapshot of any single moment says little about [a claimant's] overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ in fact noted that Jones was treating her

illness with medication, which supported her claims. (R. 48.) The fact that Jones had not manifested severe symptoms during her treatment sessions was not a valid reason to find that her testimony lacked credibility based on the ALJ's analysis.

The ALJ also justified the credibility conclusion by noting that "a review of the record disclose[d] that the claimant has cancelled or failed to attend far more mental health treatment sessions than she has attended," citing thirteen sessions over a fifteen-month period; based on this record of absences, the ALJ concluded that the "evidence strongly suggests that the claimant's mental condition is not as debilitating as she alleged." (R. 48.) The ALJ is correct that a claimant's failure to follow treatment as prescribed can be reason to discount the claimant's credibility if there are "no good reasons for this failure." SSR 96-7p, 1996 WL 374186; *see Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). However, the ALJ cannot draw such an inference "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

Here, while the ALJ correctly noted that Jones had missed a number of scheduled treatment sessions with mental health professionals, the ALJ did not

question Jones during the hearing as to her reasons for missing the appointments, did not specify any other evidence relating to the missed appointments, and provided no finding in her decision as to why Jones missed those appointments. (R. 48.) Although the Commissioner argues on appeal that the ALJ's decision on this point should be upheld because the notes of Jones's therapist "clearly found that Jones'[s] sporadic attendance was unreasonable and unacceptable," (Def.'s Mot. at 12), the ALJ did not advance this rationale in finding Jones's complaints lacked credibility; as a result, the decision cannot be upheld on that basis. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("[T]hese are not reasons that appear in the ALJ's opinion, and thus they cannot be used here.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)). And while an error in an ALJ's credibility determination can be deemed harmless where "the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding," *Pierce*, 738 F.3d at 1051, that is not the case here. Instead, Jones's testimony is credible on its face and the ALJ was explicit that the credibility finding was central to the finding of disability. Especially given the other problems with the ALJ's credibility analysis as described here, remand is appropriate. *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (remand appropriate where "[t]he administrative law judge based his judgment call on a variety of considerations but three of them were mistaken. Whether he would have made the same determination had he not erred in these respects is speculative.").

The ALJ also found that Jones was not credible because her reports of her daily activities and social capabilities were inconsistent with other evidence in the record. To an extent, the ALJ is correct: as the ALJ noted, while Jones testified at hearing that she was unable to perform any personal care activities such as personal grooming and hygiene on her own, (R. 47), the record indicates that Jones had previously stated that she was able to cook, dress, and shop for herself. (R. 456.) And while Jones also testified that she did not make any social visits and had no visitors other than her children, Jones's mother testified that Jones attends church regularly. (R. 47-48, 282.) The ALJ also pointed out that, while Jones said that she was unable to maintain concentration sufficient to watch television, her mother reported that she and Jones would frequently watch television together. (R. 282.)

While the above discrepancies were correctly noted by the ALJ, she also overstated some of those discrepancies. For instance, while the ALJ concluded as part of her credibility finding that Jones "visits with friends daily," (R. 48), the record cited by the ALJ does not support this conclusion; instead, the record – a report of Jones's functional capacity from her mother (which the ALJ discounted elsewhere in the opinion (R. 51)) – simply states that Jones "spends most of her day watching TV, visiting with family, or talking on the phone." (R. 282.) This is especially relevant given that the Seventh Circuit has often criticized ALJs for equating the ability to perform minimal household tasks with the ability to perform full-time work. *See, e.g.*, *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("We have repeatedly cautioned that a person's ability to perform daily activities,

especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time.")

Given the ALJ's credibility determination was affected by the above errors, remand is appropriate for reconsideration of these issues.

### 2. *Evidence Not Addressed by the ALJ*

Jones also argues that the ALJ's decision did not adequately address the side effects of her medication on her RFC.[5] *See Flores v. Massanari*, 19 F. App'x 393, 399 (7th Cir. 2001) ("The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process."); SSR 96-8P, 1996 WL 374184 ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication).").

At the hearing, Jones testified that she was currently using pain patches to control her pain and that she experienced some effect on her balance, dizziness, and blurred vision as a result. (R. 84.) Although not mentioning side effects from medication, the ALJ did address these symptoms in reaching the RFC determination, finding that Jones had problems with balance and accordingly

---

[5] Although Jones frames this argument as related to the ALJ's credibility determination, she argues that the side effects of the medication itself affected her ability to perform other work in the national economy, in practice arguing that the ALJ incorrectly assessed her RFC. *Compare* SSR 96-7P, 1996 WL 374186 (stating that adjudicator must consider "[t]he type, dosage, effectiveness, and side effects of any medication" as well as "the objective medical evidence when assessing the credibility of an individual's statements"), *with* SSR 96-8P, 1996 WL 374184.

limiting her RFC to work that could be performed mostly using a hand-held assistive device, as well as finding that Jones's blurred vision was contradicted by evidence in the medical record and not otherwise credible. The Commissioner did not err with regard to the consideration of these symptoms.

However, Jones also testified that she was taking anti-psychotic medication which had made her unable to sleep, that she slept only for "[m]aybe two" hours each night and, as a result, she also slept for "two to three hours a day" in thirty-minute intervals. (R. 90-91.) Jones argues that the ALJ erred when she failed to address her need to lie down during the day because of the fatigue she experienced from a lack of sleep due to her medications. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

Although the Commissioner argues that this limitation was adequately addressed by the ALJ's other analysis of credibility, the Commissioner admits in briefing that the "ALJ did not separately address Jones'[s] allegation that she was unable to concentrate because hallucinations kept her from sleeping." (Def.'s Mot. at 14.) This is especially relevant in Jones's case: as the Seventh Circuit has specified, "no employer is likely to hire a person who must stop working and lie down two or three times a day for an hour at a time." *Roddy*, 705 F.3d at 639. Furthermore, the Vocational Expert in Jones's case testified that any more than four minutes per

hour spent not working would be unacceptable to any employer, and would therefore preclude employment. (R. 107-09.)

In this case, therefore, an evaluation of these symptoms could have had an effect on the ALJ's finding of disability. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("[T]he ALJ did not mention [plaintiff's] testimony about the frequent crying spells she said she suffered as a result of her depression, and he should have at least explained whether and why he found that testimony credible or not credible, given her diagnoses of depression and related psychological problems."). And while the Commissioner argues that such an error was harmless because Jones did not specify that the inability to sleep affected her daily activities, this is incorrect: Jones connected the lack of sleep resulting from the medication to a need to nap during the day in her testimony, as described above. Accordingly, it was error for the ALJ to fail to determine the impact of this alleged symptom on Jones's RFC. *See Villano*, 556 F.3d at 562 ("If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded.").

### 3. *Evaluation of medical evidence*

Jones also argues that the ALJ failed to follow the "treating source rule" by incorrectly weighing the opinion of her treating physicians, Drs. Chicos and Dolatowski, in assessing her RFC. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "A claimant,

however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Dr. Chicos, one of Jones's treating physicians, concluded that Jones was disabled. Although listing a number of diagnoses, Dr. Chicos's form listed Jones's symptoms as "low back pain," and the medical evidence supporting her findings as "tender lower back at palpation" as well as evidence of a positive straight leg raising test. (R. 352.) The ALJ discounted that opinion, concluding that it was "vague and imprecise" and inconsistent with the opinions of other state agency doctors finding that Jones was not disabled. Jones argues that the ALJ erred by failing to explain how Dr. Chicos's opinion was "vague or imprecise," and that the ALJ did not provide a sound basis for rejecting that opinion in favor of Dr. Lavallo's. (Pl.'s Mot. at 11-12.) However, although not explicitly discussing the medical evidence in the section in which she discussed Dr. Chicos's opinion, the ALJ did address the relevant medical evidence contradicting that opinion, providing an adequate evaluation.

First, the ALJ in fact admitted that the medical records on which Dr. Chicos relied "would certainly be consistent with the claimant's allegations of pain and pressure from her neck down to her legs." (R. 47.) However, as the ALJ pointed out, Dr. Chicos's opinion was inconsistent with other substantial evidence in the record. As the ALJ noted, "[p]hysical examinations included in the record have consistently, though not universally, reported findings, which are essentially normal," and the

ALJ referred directly to the medical records contradicting Dr. Chicos's findings, (R. 47), including evidence showing that Jones had a nearly full range of motion in each joint and a negative straight leg raising test, (R. 429), as well as records from Dr. Chicos herself reporting that Jones's back was "normal." (R. 652.) The ALJ also pointed to the report of Dr. Timothy E. King who, after administering an epidural injection to Jones's back, stated that "suspect[ed] her pain is primarily a psychosocial issue." (R. 47, 961.) This is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and therefore the ALJ did not err when she declined to give Dr. Chicos's opinion controlling weight. *See* 20 C.F.R. § 404.1527(c); *Ellis v. Barnhart*, 384 F. Supp. 2d 1195, 1202 (N.D. Ill. 2005) ("The most that [the claimant's] argument establishes is that the objective medical evidence in the record could be interpreted as either consistent with or inconsistent with [the treating physician's] opinion. This Court cannot resolve evidentiary conflicts or supplant the ALJ's judgment.").

The ALJ also declined to give controlling weight to the opinion of another of Jones's treating physicians, Dr. Dolatowski, because she found it "vague and imprecise and the functional limits shown appear to be a sympathetic opinion, rather than based in the medical record." (R. 50.) The Seventh Circuit has specified that, while a treating physician's opinion is important, "it may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.' Accordingly, if the treating physician's opinion is inconsistent with the consulting

25

physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985)) (internal citations omitted).

On his evaluation form, Dr. Dolatowski listed numerous conditions contributing to his diagnosis of Jones, including diabetes, asthma, scoliosis, spinal stenosis, lumbar radiculopathy, diabetic neuropathy, and osteoarthritis of the hips. (R. 973.) Dr. Dolatowski also specified that Jones "suffers with severe depression and psychosis." (R. 974.) Similar to Dr. Chicos's opinion, the ALJ did not discuss the medical evidence relevant to Dr. Dolatowski's opinion in the same paragraph that it specified the weight the opinion was due. However, the ALJ again addressed the medical evidence contradicting Dr. Dolatowski's findings in detail earlier in the opinion. With respect to diabetes, the ALJ noted that test results had shown "no evidence of neuropathy or myopathy" and no evidence of end-organ damage. (R. 45.) Similarly, the ALJ also pointed to medical evidence showing essentially normal findings with regard to Jones's asthma, gastro-esophageal reflux disease, and hypertension. And, as discussed above, the ALJ discussed in greater depth the medical evidence regarding Jones's degenerative disk disease and back pain. (R. 46-47.) Although the statement as to credibility may not have been discussed in depth, the ALJ also pointed to substantial evidence contradicting Dr. Dolatowski's conclusion as to Jones's disability. Accordingly, the ALJ did not err in refusing to give controlling weight to the opinions of Drs. Chicos and Dolatowki.

## 4.     Consideration of the 20 C.F.R. § 404.1527(c)(2) factors

The determination not to give controlling weight to a treating source does not end an ALJ's analysis, however.  Where an ALJ does not give controlling weight to a treating source's opinion, she must nonetheless determine what value that assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. Regulations require an ALJ to consider a variety of factors in determining the weight due to an examining physician's report, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Scott*, 647 F.3d at 740. Jones argues that, in rejecting the opinions of both Drs. Chicos and Dolatowski, the ALJ failed to engage in any of the required analysis with respect to the weight due the medical opinions.

It is true that, in concluding that the opinions of Drs. Chicos and Dolatowski were due no weight, the ALJ did not explicitly mention the factors discussed above. And, although the ALJ's decision discussed the supportability and consistency of those medical opinions with the record, it failed to consider the other factors present in the regulation. There is some disagreement within in the Seventh Circuit as to whether or not an ALJ's failure to explicitly discuss all the factors in a decision requires remand on its own. *Compare Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (remanding where "[t]he ALJ's decision indicate[d] that she considered opinion evidence in accordance with §§ 404.1527 and 416.927" but did not "explicitly

27

address the checklist of factors as applied to the medical opinion evidence") *with Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (finding ALJ opinion sufficient where, "while the ALJ did not explicitly weigh each factor in discussing [the doctor's conclusion], his decision makes clear that he was aware of and considered many of the factors"); *see also Duran v. Colvin*, No. 13-CV-50316, 2015 WL 4640877, at *8 (N.D. Ill. Aug. 4, 2015) (discussing split in authority).

Since remand is already appropriate here, the Court need not decide whether a failure to explicitly discuss the factors in the regulation would require remand on its own. On remand, however, the ALJ should expressly consider these factors in deciding the weight to be given to Jones's treating physicians according to the regulatory factors when redetermining Jones's RFC in accordance with this opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff Jones's motion to Reverse the Decision of the Commissioner of Social Security is GRANTED IN PART and DENIED IN PART, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is DENIED. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                                    **ENTERED:**

**DATE:    October 22, 2015**              _____
                                           **HON. MARIA VALDEZ**
                                           **United States Magistrate Judge**